## EDMONDSTON et al. v. PORTER.

No. 7313—Opinion Filed Jan. 2, 1917.

Rehearing Denied Jan. 30, 1917.

(162 Pac. 692.)

**1. Parties—Necessary Parties—Defendants.**

"Any person who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the questions involved, may be made a party defendant." Haynes v. City Nat. Bank of Lawton, 30 Okla. 614, 121 Pac. 182.

**2. Appearance—Effect of—"General Appearance."**

"Whether an appearance is general or special does not depend upon the form of the pleading, but upon its substance. If a defendant invokes the judgment of the court upon any question except that of the power of the court to hear and decide the cause, his appearance is general." Haynes v. City Nat. Bank of Lawton, 30 Okla. 614, 121 Pac. 182.

**3. Contracts—Duress—What Constitutes.**

"Duress sufficient to avoid a contract is said to exist when consent thereto is obtained by (Rev. Laws 1910, sec. 900) unlaw-

ful confinement of the person of the party, or (Rev. Laws 1910, sec. 901) a threat of such unlawful confinement. The question in each case is: Was the person so acted upon by threats of the person claiming the benefit of the contract for the purpose of obtaining such contract as to be bereft of that quality of mind essential to the making of a contract and was the contract thereby obtained?" Piekenbrock v. Smith, 43 Okla. 585, 143 Pac. 675.

**4. Pleading—Amendments—Allowance.**

"Amendments of pleadings may be allowed in furtherance of justice, when such amendments do not substantially change the cause of action or defense. This change does not refer to the form of the remedy, but to the general identity of the transaction." E. Van Winkle Gin & Machine Works v. Brooks, 53 Okla. 411, 156 Pac. 1152.

(Syllabus by Hayson, C.)

Error from District Court, Kay County; W. M. Bowles, Judge.

Action by S. T. Porter against S. J. Edmondston and the First National Bank of Blackwell, Okla. · Judgment for plaintiff, and defendants bring error. Affirmed.

Garber & Kruse, for plaintiffs in error.

H. S. Gurley, for defendant in error.

Opinion by HAYSON, C. Susie T. Porter brought suit against S. J. Edmondston and the First National Bank of Blackwell, seeking to cancel and set aside a certain promissory note and chattel mortgage in favor of S. J. Edmondston, and to recover certain diamonds placed in escrow with the First National Bank of Blackwell as a pledge and additional security for the payment of the promissory note. She also asked to have the bank enjoined from turning the property over to Edmondston until the final determination of the suit. The plaintiff claimed that the note and mortgage were obtained without consideration, and that the same were signed under duress. The records discloses the following state of facts: Susie T. Porter, then Susie Trotter, became acquainted with S. J. Edmondston in about 1903. They began to keep company with each other, and up till the summer of 1912 were much in each other's company, and during all of those years between 1903 to the late summer of 1912 had carried on quite an extensive correspondence, the letters being in many instances love letters. During the long acquaintance and constant association the defendant S. J. Edmondston had given into the possession of Susie Trotter a diamond ring and a diamond brooch. There is a direct conflict in the testimony as to whether these were gifts to Susie Trotter or whether

they were merely loaned to her to wear. On August 21, 1912, Susie Trotter married Frank Porter at Blackwell, Okla. During all the years of acquaintance between her and Edmondston she had been a school-teacher, and at the time of her marriage had been elected principal of the Blackwell schools for the ensuing year. The Blackwell school term began September 9, 1912, and she intended to teach that term. The evidence discloses that upon learning of her marriage to Porter Edmondston telephoned Mrs. Porter from Enid that he desired the return of the diamonds and $50 that Edmondston had loaned her some years previous. She declined to return the diamonds, but offered to give Edmondston her note for $50. About September 5th or 6th Edmondston came to Blackwell and consulted Mr. Tetrick, an attorney, with reference to the recovery of the diamonds, and during such consultation informed Mr. Tetrick that he had ·in his possession certain letters pertaining to same from Mrs. Porter received during the years of their acquaintance. Tetrick was a member of the school board at Blackwell and was unfriendly to Mrs. Porter. After this consultation with Mr. Tetrick, Edmondston returned to Enid, secured the letters, and delivered them to Mr. Tetrick on September 7, 1912. A meeting of the school board at Blackwell was had on that night, Mr. Tetrick and Edmondston appearing there with the letters, and Mrs. Porter appearing there at the request of the school board. Edmondston submitted to an examination in explanation of the letters read, and through such letters and examination the impression was conveyed to the school board that Edmondston and Mrs. Porter had sustained intimate relations with each other during all the course of their acquaintance. Mrs. Porter immediately filed her resignation as principal of the Blackwell schools. This occurred Saturday evening, September 7, 1912. On the following Tuesday, September 10, 1912, Edmondston filed an action in replevin against Mrs. Porter seeking to recover the possession of the diamond ring and diamond brooch. A redelivery bond was executed by Mrs. Porter. Between that date and September 25, 1912, various negotiations back and forth, took place between Mrs. Porter and parties who it is claimed represented Edmondston, which resulted in Mrs. Porter sending her attorney to Enid authorized to offer as much as $400 to Edmondston to release his claim on the diamonds, to return to Mrs. Porter the letters he had received from her, to dismiss the replevin action, and cease to talk further as to their former relations. The evidence shows that prior to this offer an attorney by the name of M. D. Asher called upon Mrs.

Porter and purported to come from Edmondston to inform her if the matter was not all settled up he was going to have her arrested and taken to Enid; that the county attorney was unfriendly to her; that Edmondston had seen the county attorney, and he was ready any minute Edmondston made complaint to have a warrant issued and have her arrested and taken to Enid. After Mrs. Porter's attorney went to Enid and consulted with Edmondston and his attorney, negotiations were begun which culminated on September 25, 1912, in Mrs. Porter signing a promissory note for $425 in favor of Edmondston, due one year after date, executing a chattel mortgage on the diamonds in question as security, and as an additional security placing the diamond in escrow with the First National Bank of Blackwell as a pledge; the escrow agreement providing that, if the note or any part of it remained unpaid at the date it was due, the diamonds were to be turned over to Edmondston, and if the note was fully paid the diamonds were to be turned over to Mrs. Porter. The bank agreed in writing to perform its part of the escrow agreement. In consideration for the note, etc., Edmondston dismissed the replevin suit, turned over the letters to Mrs. Porter that had been written by her to him in the past, and agreed to mention their previous relationship no further. There were many other material matters brought out on examination; that plaintiff testifying that Edmondston told her that if the matter was not settled he would make her letters public and would see that her husband knew their contents, etc. This, however, was denied by Edmondston. The plaintiff states that all of these matters so disturbed her that she would have signed anything at the time the contract was entered into that would relieve her of the impending situation.

On August 4, 1913, Mrs. Porter filed her action to cancel and set aside the contract and for the return of the diamonds to her upon the grounds of failure of consideration and duress; the duress complained of being false and fraudulent representations and the threat of defendant Edmondston to make the letters of plaintiff public. At the close of the testimony in the case, and during the argument, plaintiff, over the objection of defendant Edmondston, was permitted to amend her petition to conform to the proof, the amendment consisting of the further allegations that the defendant Edmondston had threatened to communicate to plaintiff's husband that he had had sexual intercourse with plaintiff prior to her marriage, and threatened to show the letters to plaintiff's husband and make the same public, and had threatened to cause plaintiff's arrest for alleged embezzlement.

The court rendered judgment for plaintiff canceling the note and mortgage, except as to $50, and found that the plaintiff was the owner of the property, gave judgment for defendant for $50, and made an order dividing the costs. From the judgment of the court, defendant Edmondston appeals. The defendant First National Bank of Blackwell filed no pleadings in the cause, and, so far as the record discloses was not represented by counsel at the trial. The defendant Edmondston brings error.

Plaintiff in error first complains that the court committed error in overruling his motion to quash and set aside the service of summons, which motion was supported by affidavit. We have set out the substance of the record in order that our position in this assignment of error may be clear. Edmondston lived in Garfield county, and the other defendant in the cause, First National Bank of Blackwell, was situated in Kay county, where this action was brought. Plaintiff in error filed his motion to quash on the ground that the court was without jurisdiction on account of his codefendant not being a proper or necessary party defendant, by reason of not having any real or substantial interest in the case. We cannot uphold this contention. We believe that the First National Bank of Blackwell was not only a proper party defendant, but was a necessary party to a complete determination of the matters involved in the suit. Counsel cite Rullman v. Hulse, 33 Kan. 670, 7 Pac. 210; also 32 Kan. 509, 5 Pac. 176; Foster v. Cimarron Valley Bank of Coyle, 14 Okla. 24, 76 Pac. 145. The question raised by counsel, together with the authorities cited, is a serious one. Courts cannot be too careful in determining their jurisdiction in the first instance in cases of this character. A defendant has the undoubted right to defend in his own county unless the circumstances that permit one to bring suit against him in another county bring him squarely within the statute. The question to be determined here is whether or not the First National Bank of Blackwell was a proper or necessary party defendant. This court has had the question before it in a case very similar in principle to the one at bar. Haynes, Adm'x, v. City Nat. Bank of Lawton et al., 30 Okla. 614, 121 Pac. 182. The court laid down this rule in that case:

"Any person who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the questions involved, may be made a party defendant."

Also:

"The court may determine any controversy between any parties before it, when it can

be done without prejudicing the rights of others, or by saving their rights. When, however, this cannot be done without the presence of other parties, the court must order them brought in."

The First National Bank of Blackwell had possession of these diamonds. Their part of the escrow agreement was plain. If the note was not paid at maturity, the diamonds were to be given to Edmondston. If it was paid at maturity, they were to be returned to Mrs. Porter. The date of maturity of the note was obviously to be reached before a determination of the question involved in the suit could be reached. Consequently, in order to effect a complete determination of the case, the status of the defendant bank must be determined. The bank was not only a real party in interest, but, we think, a necessary party to the complete determination of the issues involved. There is yet another reason, it seems to us, why this question cannot now be urged. In the answer filed by plaintiff in error he asks for affirmative relief, and thereby loses his right to insist upon his motion to quash. He prays in his answer as follows:

"Wherefore defendant asks judgment for the return of said personal property and an order directed to the codefendant, the First National Bank of Blackwell, to restore the same to this defendant forthwith, for costs of suit, and for such other and further relief as the equity of the premises may afford."

In the case above cited, Haynes, Adm'x, v. City Nat. Bank of Lawton et al., 30 Okla. 614, 121 Pac. 182, the court lays down this further rule:

"Whether an appearance is general or special does not depend upon the form of the pleading, but upon its substance. If a defendant invokes the judgment of the court upon any question, except that of the power of the court to hear and decide the cause, his appearance is general."

The plaintiff in error contends that the court erred in overruling nis demurrer to the plaintiff's amended petition. Upon an examination of the amended petition, the demurrer and the grounds therefor, we find no error in the court's ruling on this question, and on account of other assignments involving the same questions that will be discussed later we will pass it without further comment.

The next assignment raised by plaintiff in error is that there was no failure of consideration for the contract entered into between plaintiff and defendant. If duress or menace was resorted to for the purpose of compelling defendant to enter into the contract, and but for such duress she would not have entered into it, and did not afterwards expressly ratify it, the question of consideration becomes of minor importance, and the contract would not be permitted to stand merely because there was a consideration involved.

The next error complained of by plaintiff in error is that there was not sufficient evidence to make out a case of duress. Considering the evidence in the light of the amendment to the petition allowed by the court to conform to the proof, it is difficult for us to imagine a case where a clearer claim of duress and menace, under our statute, could be made out. In Piekenbrock v. Smith et al., 43 Okla. 585, 143 Pac. 675, Mr. Justice Turner in the body of the opinion said:

"Duress sufficient to avoid a contract is said to exist when consent thereto is obtained by (Rev. Laws 1910, sec. 900) unlawful confinement of the person of the party, or (section 901) a threat of such unlawful confinement. This is in keeping with Bouvier, who defines duress to be 'personal restraint or fear of personal injury or imprisonment.' "

The court there lays down this principle in the syllabus:

"The question in each such case is: Was the person so acted upon by threats of the person claiming the benefit of the contract, for the purpose of obtaining such contract, as to be bereft of that quality of mind essential to the making of a contract, and was the contract thereby obtained?"

Measured by the law thus laid down by this court, was the evidence sufficient? The court so found, there is ample evidence in the record to sustain the finding, and the finding will not be disturbed.

We come now to the last assignment of error complained of by plaintiff in error: Did the court err in permitting the plaintiff to amend her petition to conform to the proof? In a long and unbroken line of cases this court has held that it is not error for the trial court to allow amendments to pleadings during the trial, in the furtherance of justice, when such amendments do not substantially change the claim or defense, and that the allowance of such amendments rests in the sound discretion of the court. In Shawnee-Tecumseh Traction Co. v. Woolard, 54 Okla. 432, 153 Pac. 1189, the court says:

"The allowance of amendments to pleadings during the trial, in the furtherance of justice, when the same do not change substantially the claim or defense, rests in the sound discretion of the court, and the same will not be disturbed unless such amendments have operated to prejudice the rights of the complaining party."

And again in E. Van Winkle Gin & Machine Works v. Brooks, 53 Okla. 411, 156 Pac. 1152.

"Amendments of pleadings may be allowed in furtherance of justice, when such amendments do not substantially change the cause of action or defense. This change does not refer to the form of the remedy, but to the general identity of the transaction."

And again in Elliott v. Coggswell, 56 Okla. 239, 155 Pac. 1146:

"Before or after judgment amendments may be allowed by inserting allegations material to the case when such amendments do not· change substantially the plaintiff's claim."

Also:

"Amendments are favored under our procedure, and in the furtherance of justice amendments generally should be allowed. However, the granting or refusing permission to amend rests largely within the discretion of the trial court."

Other cases to the same effect are as follows: Lookabaugh v. Bowmaker, 21 Okla. 489, 96 Pac. 651; Alcorn et al. v. Dennis, 25 Okla. 135, 105 Pac. 1012; City of Shawnee et al. v. Slankard, 29 Okla. 133, 116 Pac. 803; West & Russell v. Rowden et al., 33 Okla. 399, 130 Pac. 1160.

Does the amendment conform to the proof? From a complete examination of the testimony we must answer that it does. Did the amendment substantially change the issues or prejudice the plaintiff in error? We think not. The gist of this action was duress. All the witnesses had told what they knew of the transaction. The plaintiff and defendant had had the opportunity to tell all they knew of the transaction. The amendments call for no different or additional proof upon the part of the plaintiff. The defendant had controverted all of the testimony he deemed it was necessary to controvert. He asked for no additional time to procure testimony.

Finding no error in the record, the judgment of the trial court is affirmed.

By the Court: It is so ordered.