## GOURLEY v. JACKSON (two cases).

Nos. 15748, 15749, Consolidated. Opinion Filed Nov. 10, 1925.

Rehearing Denied Jan. 26, 1926.

**1. Pleading—Sufficiency of Petition on General Demurrer.**

The allegations of a petition, when challenged by a general demurrer, must be construed liberally in favor of the pleader, and such demurrer admits the truth of all allegations well pleaded, and if any facts are stated which entitle the pleader to any relief, the demurrer will be overruled.

**2. Trial—Demurrer to Evidence—Effect.**

A demurrer to the evidence admits all the facts which the evidence reasonably tends to establish and all the inferences and conclu-

sions which may be reasonably drawn therefrom.

### 3. Negligence—Contributory Negligence — Jury Question—Absence of Primary Negligence—Effect.

While under section 6, art. 23, of the Constitution, contributory negligence and assumption of risk are questions of fact to be submitted to the jury, this section does not apply to the primary negligence because of which a recovery is sought, and where there is no evidence reasonably tending to show that the defendant is guilty of negligence, it is error for the trial court to submit the case to the jury.

### 4. Appeal and Error—Prejudicial Error — Misleading Instruction.

Where the record shows an erroneous instruction, which is confusing, and which might and probably did mislead the jury, the giving of such instruction constitutes prejudicial error.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Oklahoma County; O. L. Price, Judge.

Actions by W. S. Jackson and Mrs. W. S. Jackson against Austin B. Gourley to recover damages for personal injuries. Judgment for plaintiff in each of the separate actions, and defendant appeals. Reversed and remanded.

Horton & Horton, for plaintiff in error.

Shirk, Danner & Mills, for defendants in error.

Opinion by RUTH, C. The plaintiffs brought their separate actions against the defendant, Austin B. Gourley, and judgment being rendered in favor of each of the plaintiffs, the defendant appeals, and the cases were consolidated by order of this court. The petitions are for all practical purposes identical, and the evidence varies but slightly, and the cases can be considered together.

In case No. 15749, the petition alleges plaintiff was driving a Ford touring car east on East 23rd street, approximately ten miles east of Oklahoma City, and defendant was driving a "Tulsa" touring car west on said street, and defendant carelessly and negligently drove his automobile against the automobile of plaintiffs causing certain injuries. The negligence of the defendant is alleged in paragraphs 3 and 4 of plaintiffs' petition as follows:

"(3) That his negligence consisted, among other things, of driving his said automobile at a reckless and unlawful rate of speed of 25 miles per hour, and of driving said automobile on the wrong side of the street, and of improperly endeavoring to pass another automobile at a place where it was impossible to pass without striking plaintiffs' automobile, and particularly in handling his automobile in a negligent and careless manner without regard for the safety of others upon said street."

"(4) That at the time plaintiff's car was struck, he was on the south side of said street, same being his right side, and that defendant was on the south side of the street, same being his left side, and that the defendant was running almost abreast with another car, which was on the north side of the street, said pavement at that point being but 18 feet wide, and with a deep ditch to the south side thereof, and the plaintiff was without fault in the premises."

Defendant filed his motion to require the plaintiff to make his petition more definite and certain, which motion was by the court overruled, and defendant filed his demurrer to the petition, which demurrer was by the court overruled, and defendant excepted, and the ruling of the trial court is assigned as error.

By section 2, ch. 16, Sess. Laws 1923, p. 21, it is made unlawful for any person to operate or drive an automobile upon any street, road, etc., within the state of Oklahoma at a greater rate of speed than 35 miles per hour, and to allege defendant operated or drove his automobile over a road, where there is no traffic regulation except as provided by statute, at the rate of 25 miles per hour, without alleging some circumstance or condition of traffic at that particular time and place, as would show such a rate of speed constituted reckless driving and negligence, fails to state a cause of action in so far as this particular portion of the petition is involved. It is true that to drive a motor vehicle at the rate of ten or even five miles per hour may under certain conditions constitute negligence. One seeing the prostrate body of a man in the road would not be absolved from negligence, if he deliberately drove over him at a slow rate of speed, but where the person charged with negligence is not operating his car in excess of the rate of speed prescribed by law, he is not guilty of negligence per se, and the particular facts, circumstances, and surroundings must be described and alleged before negligence can be predicated thereon.

Section 10164, C. O. S. 1921, title, "Rules

of the Road," provides in rule 2 thereof as follows:

"All vehicles overtaking others shall in passing keep to the left of the center of the road, and shall not pull over to the right until entirely clear of the vehicle passed."

Therefore, to charge the defendant with being on the left-hand side of a vehicle, he was then passing, or, in the words of paragraph 4 of plaintiff's petition, "that at the time plaintiffs' car was struck, he was on the south side of the road, same being his right side, and defendant was on the south side of the road, same being his left side, and that the defendant was running almost abreast with another car, which was on the north side of the road." does not charge the defendant with negligence per se, and standing alone does not charge defendant with negligence in any degree, as it simply charges him with doing that which the law directs him to do; and section 10165, C. O. S. 1921, provides a punishment by fine of not more than $100, or by imprisonment in the county jail for a period of 30 days, or by both such fine and imprisonment for a driver's failure to do that which the plaintiff's petition alleges defendant was actually doing. Nor does the allegation that the paved portion of the street at that point was 18 feet wide, and with a deep ditch on the south side of the road, standing alone, charge the defendant with negligence where it is not alleged there was not sufficient space between defendant's car and the alleged ditch for plaintiff to pass in safety, or without showing or alleging the approximate distance from the south side of the plaintiffs' car to the alleged ditch.

It is true, autoists and drivers of vehicles carrying heavy loads are inclined to and have a right to use the hard surface portion of the road, and it is equally true that persons driving horses attached to light vehicles prefer the dirt road and equestrians prefer the dirt road as a bridle path, particularly where the horses they are driving or riding are unshod, and the drivers of motor or horse-drawn vehicles are not entitled, as a matter of right, to insist upon one-half of the paved portion of the road, where the danger of so doing is open, obvious and imminent.

The act of 1923, supra, provides:

"Any person or persons operating or driving, or propelling any vehicle * * * upon said highways shall operate, drive, or propel same in a careful and prudent manner, and at a rate of speed not greater than is reasonable under the existing circumstances, and having due regard to the traffic, and use of the highway, and having due regard for the safety of pedestrians or property, and drivers or operators of other vehicles," etc.

A review of the petition impresses us with the fact that the only negligence charged, upon which plaintiff could maintain an action, is found in paragraph 3 of the petition, where plaintiff alleges defendant's negligence consisted of:

"Improperly endeavoring to pass another automobile at a place where it was impossible to pass without striking plaintiffs' automobile, and particularly in handling his automobile in a negligent and careless manner, and without regard for the safety of others upon said street."

While this allegation of negligence is very general in its nature, still, when read with the allegations of the rate of speed, the passing of another vehicle, and being on the left-hand side of the road, which, while not negligence per se, are explanatory of conditions at that point at that time, it nevertheless charges in the words of the statute, and may be held sufficient as against demurrer.

The allegations of a petition, when challenged by a general demurrer, must be construed liberally in favor of the pleader, and such demurrer admits the truth of the allegations (Ross v. Breene, 88 Okla. 39, 211 Pac. 417), and if any facts are stated which entitle the pleader to any relief, the demurrer will be overruled. Hugo State Bank v. Hugo National Bank, 96 Okla. 135, 220 Pac. 868; Hoffman v. Deskins, 94 Okla. 117, 221 Pac. 37; Carter v. Grimmett, 89 Okla. 37, 213 Pac. 732; Good v. First National Bank, 88 Okla. 110, 211 Pac. 1051; Bush v. Mo. St. Life Ins. Co., 86 Okla. 182, 207 Pac. 317.

Where the plaintiff's petition, taken in its entirety shows a good and legal cause of action against the defendant, the demurrer of the defendant thereto must be denied. Carignano v. Box, 97 Okla. 184, 223 Pac. 673.

Upon the demurrer to the petition being overruled, defendant filed his answer consisting of a general denial and contributory negligence. The cause was tried to a jury, and at the conclusion of the plaintiff's testimony, defendant interposed a demurrer thereto, which was by the court overruled, and defendant excepted and assigns error in the ruling of the court.

"A demurrer to the evidence admits all the facts which the evidence reasonably tends to establish, and all the inferences and conclusions which may reasonably be

drawn therefrom." Thelma Oil & Gas Co. v. Sinclair Gulf & Oil Co., 97 Okla. 5, 222 Pac. 686; Brady v. Interstate Mortgage Trust Co., 96 Okla. 293, 223 Pac. 145; Lamb v. Ulrich, 94 Okla. 240, 221 Pac. 741; Beggs Oil Co. v. Deardorf, 97 Okla. 33, 222 Pac. 535; Shawnee Gas & Electric Co. v. Griffith, 96 Okla. 261, 222 Pac. 235.

At the conclusion of all the evidence for both plaintiff and defendant, the defendant requested the court to instruct the jury to return a verdict for defendant, for the reason that the evidence failed to prove any negligence on the part of the defendant to sustain a verdict or judgment for the plaintiff. The requested instruction was refused, and defendant excepted.

The plaintiff testified he was driving east on East 23rd street, about ten miles east of Oklahoma City, and saw two cars approaching from the east. One of these cars was on the north side of the paved portion of the road, and one "a little south" of the center of the paved portion of the road, and to the rear of the north car, both coming west. Although plaintiff could see and did see both cars, he continued to drive his car at the rate of 20 miles per hour, never slacking his speed, or applying his brakes, or stopping, or making any effort to turn out to the right of the south car, which proved to be the defendant's car, and his testimony is to the effect that defendant's car was trying to pass the other car. The evidence further shows plaintiff did not swerve, but kept his car pointed directly at the defendant's car until the two cars were but a few feet apart, when defendant turned his car to the north, or right-hand side of the road, coming west, and plaintiff testifies he, plaintiff, thought he saw an opening between the two west-bound cars, and plaintiff turned his car to the north, or the left-hand side of the road, going east. Plaintiff testifies he did not slacken his speed by cutting off his gas, or applying his brakes, but continued to drive straight into the defendant's car, "On the theory that defendant was on the wrong side of the road, and I (plaintiff) was on the right side." Plaintiff further testifies that the reason he did not turn to the right to pass defendant's car, was that there was a ditch to the right and had he turned to the right, he would have gone into the ditch, Ellison, a witness for plaintiff, who was driving the car just ahead of and to the north of defendant's car, testified that defendant sounded his horn, indicating the rear car wanted to pass witness' car, and defendant's car was from 10 to 20 feet to the rear, and to the south side of

witness' car, and we gather from the record that this was the opening plaintiff tried to drive through at the rate of 20 miles per hour, and between two cars coming toward him at the rate of from 25 to 30 miles per hour. The exhibit introduced by plaintiff, to show the relative positions of the cars, discloses a clear space (distance not marked) on the south side of defendant's car and between the car and the edge of the paved portion of the road, and discloses the plaintiff's car going east was a trifle south of the south side of defendant's car. There was evidence introduced to the effect that outside and south of the defendant's and plaintiff's cars, at the time and place of collision, the dirt portion of the road was from six to eight feet wide south of the paved portion, and witnesses described this dirt road "as smooth and level as this floor," indicating the floor of the courtroom, and a photograph was introduced in evidence showing a car standing on this portion of the dirt road, the north side of said car being 18 inches south of the south side of the paved portion, conclusively evidencing the fact that plaintiff could have passed defendant's car to the right as directed by statute, instead of which plaintiff elected to turn north, as is prohibited by statute, and a photograph of the car shows plaintiff's car struck the north or right-hand side of defendant's car. The undisputed evidence is that there was ample room for the cars to pass without injury to persons or property, had plaintiff pulled to the right as directed by law.

It is a settled rule of law that one may not proceed in a direct line when he knows that by so doing injury to property or persons must inevitably result, and the danger of so proceeding is open, obvious, and imminent, and this is particularly true where the person so proceeding knows of the danger in time to avoid the same by stopping, or by checking his progress, and when such person elects to proceed at a high rate of speed and turns to his left in violation of law, instead of to his right, as directed by law, and where by turning to the right he can avoid an accident, such person cannot recover damages for injuries resulting from his own wrong.

The plaintiffs in these consolidated cases being man and wife, each testified in their individual case, and each testified that for a full quarter of a mile they had a clear, unobscured view of the west-bound cars, in their positions, one north, and one a trifle south of the center of the paved portion of

116—2

the road, notwithstanding which plaintiff's car was driven at the rate of 20 miles per hour direct at the defendant's car, and then seeing what he believed to be an opening between the west-bound cars, plaintiff turned to the left in violation of the law, and attempted to drive through this opening, and the cars crashed together. Had the positions of the parties been reversed, had Gourley been plaintiff and Jackson defendant in the trial court, could we say that under Jackson's own testimony he was not guilty of primary negligence?

We think the rule laid down in Beach on Contributory Negligence, and supported by abundant authorities, is applicable to the instant case.

Mr. Beach says:

"Where one, after discovering that I have carelessly exposed myself to an injury, neglects to use ordinary care to avoid hurting me, and inflicts the injury upon me as a result of his negligence, there is very little room for a claim that such conduct on his part is not willful negligence."

In Everett v. L. A., etc., R. Co., 115 Cal. 105, 43 Pac. 207, 46 Pac. 889, 34 L. R. A. 350, it is held:

"Persons cannot be recklessly or wantonly run down on a railroad track, however negligent themselves, where the circumstances are such as to convey to the mind of a reasonable man a question as to whether they will be able to get out of the way."

See, also, Meeks v. S. P. R. R. Co., 56 Cal. 513, 38 Am. Rep. 67. Harrington v. Los Angeles Ry. Co. (Cal.) 74 Pac. 15, was an action against the railway company for causing the death of A. E. Harrington. It appears there was a bicycle race being held on the streets of Los Angeles in violation of the city ordinance. The motorman of the car had knowledge of the race, was warned as to the racers' approach on their way from Los Angeles to San Pedro, saw the racers coming, but drove his car through the crowd on the car tracks, gathered to watch the riders at that point, and struck and killed one of the riders in the race. The court in affirming a judgment in favor of the personal representative of the deceased said:

"Deceased, by reason of his own negligence, was placed in a position of peril with relation to defendant's car. The defendant knew that the deceased was so placed, knew that it was at least doubtful whether the deceased could, by any act of his, remove himself from such peril, knew that it could by the exercise of ordinary care, by simply stopping its car, absolutely remove the source of the danger and avoid the injury. It failed to exercise such care, and recklessly pushed its car forward into the path over which the deceased was approaching."

That court further said:

"It would be difficult to find a case more clearly justifying the application of the rule so often approved by this court, to the effect that one having knowledge of the dangerous situation of another, and having a clear opportunity by the exercise of proper care to avoid injuring him, must do so, notwithstanding the latter placed himself in such situation of danger by his own negligence." Citing cases.

While it is true section 6, art. 23, of the Constitution of Oklahoma provides that the defense of contributory negligence or assumption of risk shall, in all cases whatsoever, be a question of fact, and shall at all times be left to the jury, this section should not be construed to mean that juries may totally and wholly disregard all the evidence and arbitrarily determine a question upon mere whim or caprice. Questions of fact must be determined by the evidence, and where the evidence of the plaintiff in an action of damages for personal injuries is overwhelming, and shows conclusively that the danger was open and obvious and was seen by the plaintiff when he was a full quarter of a mile from the danger, and such danger could have been removed and the accident avoided by the exercise of reasonable care on the part of the plaintiff, and plaintiff elected to drive into the danger under a mistaken theory that defendant had no right to be where he was, and plaintiff drove to the left in violation of the law, when by turning to the right, as directed by law, or by stopping his car, the injury could have been avoided. the jury cannot totally ignore this evidence falling from the lips of the plaintiff, and under such evidence plaintiff cannot recover. The plaintiff testifies defendant did turn to the right, which would have placed defendant's car on the north side of the road and behind the witness Ellison's car, while plaintiff turned to the left directly across the front of defendant's car, because, as plaintiff expresses it, "he saw an opening between the cars and thought he could get through."

The plaintiff has wholly failed to prove the defendant handled his automobile in a negligent and careless manner without regard for the safety of others on the said street, which, as this court views it, was the only allegation of negligence in this case, and upon proof or lack of proof of which the plaintiff must succeed or fail.

In Phoenix Printing Co. v. Durham, 32 Okla. 575, 122 Pac. 708, and Midland Valley Ry. Co. v. Graney, 77 Okla. 54, 185 Pac. 1088, this court said:

"While under section 6, art. 23, of the Constitution contributory negligence and assumption of risk are questions of fact to be submitted to the jury, this section does not apply to the primary negligence because of which a recovery is sought, and where there is no evidence reasonably tending to show that a defendant is guilty of negligence, it is error for the trial court to submit the issue to the jury."

To hold otherwise than is herein determined would be tantamount to holding that a driver on the right-hand side of the paved street might blindly proceed along a straight course regardless of all obstacles or the imminence of danger to persons or property, and would create an intolerable condition not contemplated by the rules governing traffic upon public thoroughfares.

The instructions of the court are numerous and voluminous, and defendant's assignments of error numbered 4 to 11 are directed against these instructions.

The court first instructed the jury that the negligence complained of consisted in driving the car of defendant at an unlawful and reckless rate of speed of 25 miles per hour and on the wrong side of the street, and because of the negligent and reckless manner in which defendant was driving his automobile he negligently and carelessly ran his car into the car of the plaintiff, inflicting the injuries complained of. As has been pointed out in this opinion, the driving of a car at the rate of 25 miles per hour outside a city having an ordinance regulating the speed of cars is not negligence per se, and, as further pointed out in this opinion, it is the duty of a driver of a car in passing a car going in the same direction, to drive to the left of the center of the road and to to the left of the car he is attempting to pass, and to maintain that position until he is entirely clear of the passed car, and the use of the words "wrong side of the street," when taken in connection with the other instructions, would tend to mislead or confuse the jury into believing and finding that the mere fact of being on the left-hand side of the road was negligence of itself, or to indulge a paradox, "that the right side was the wrong side."

Instruction No. 4 says in part:

"But the burden is upon the plaintiff to prove by a preponderance of the evidence the negligence alleged in his petition, and that such negligence was the direct and proximate cause of the accident."

Instruction No. 5 contains the following:

"You are instructed that the plaintiff did not predicate negligence in this case upon the speed of the car alone, but upon the negligence of the defendant in being on the wrong side of the street and endeavoring to pass another car under such circumstances as to be dangerous to the plaintiff," etc.

All through the instructions the defendant's car is referred to as being on the wrong side of the road, but, as we have pointed out, the statute specifically requires one, in passing a car going in the same direction, to pass to the left-hand side of the center of the road and to maintain that position until clear of the car he is passing.

Instruction No. 3, wherein the court instructed the jury on the duty of the plaintiff to stop his car on the appearance of danger, the court falls into the same error. The instruction was as follows:

"You are further instructed in this case that even if you should find that the defendant was guilty of negligence and that, as a matter of fact, he was on the wrong side of the street, and further find and believe that the plaintiff saw him in plenty of time to have stopped his car and avoided the accident, then and in that event you are instructed it was his duty to do so, and that the mere fact that the defendant may have been on the wrong side of the street does not justify plaintiff's failure to stop the car and avoid the accident, and if you so find and believe, then you should return a verdict for the defendant."

While this instruction substantially defines the duty of the plaintiff upon the appearance of imminence of danger, it still leaves the impression that the defendant being on the left-hand side was on the wrong side, and all through the instructions there is woven the warp and woof of defendant's wrong by running at a speed of 25 miles per hour, and passing a car on the left side of the road, and the instructions, taken as a whole, certainly would lead a jury to believe that it was only necessary to find one of these allegations to be a fact to warrant a verdict for plaintiff, whereas the negligence, if any, would consist of driving the automobile at a rate of speed greater than is reasonable under the existing circumstances, and having due regard for the safety of pedestrians or property and drivers of other vehicles, etc., as provided by chapter 16, sec. 2, Sess. L. 1923, and this is true regardless of the rate of speed, or upon which side of the road the negligent person may be

driving, and the rule that due regard for the safety of others, even though you have the right of way, may require you to come to a full stop, is well fortified by decisions and common sense.

This court has frequently been called upon to pass upon the question of conflicting, confusing, or misleading instructions, and has held:

"If an instruction, although unobjectionable as an abstract proposition of law, is calculated to mislead the jury and affect their conclusion upon the issue submitted to them, it will call for reversal. Still, while abstract instructions are not generally ground for reversal, it is the better practice to omit or refuse instructions of that character." Cosden Pipe Line Co. v. Berry. 87 Okla. 237, 210 Pac. 141.

"Where the record shows an erroneous instruction which might and probably did mislead the jury, the giving of such instruction constitutes prejudicial error." Watkins v. Huff, 101 Okla. 5, 222 Pac. 693.

The instructions in these consolidated cases were, taken as a whole, confusing and misleading and were prejudicial to the rights of the defendant. and for the reasons herein stated, the judgment of the trial court in each of these cases should be reversed. and the cases and each of them should be remanded, with instructions to grant the defendant a new trial in each case.

By the Court: It is so ordered.

Note.—See under (1) 31 Cyc. pp. 78, 289, 290, 333. (2) 38 Cyc. p. 1543. (3) 29 Cyc. pp. 627 (Anno). 640. (4) 4 C. J. 1031. § 3013.